# EXHIBIT 2- PETITION

## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
### STATE OF OKLAHOMA

| | |
|---|---|
| DREW HARDWARE, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. |
| HARTFORD FIRE INSURANCE CO.; SENTINEL INSURANCE COMPANY, LTD.; and MARTIN INSURANCE LLC, | ) |
| Defendants. | ) |

CJ - 2014 - 1506

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

MAR 1 4 2014

TIM RHODES
COURT CLERK
$0 _____

### PETITION

Drew Hardware, LLC, for it's cause of action against Hartford Fire Insurance Company, Sentinel Insurance Company, LTD., and Martin Insurance LLC, alleges and states as follows:

### JURISDICTION AND VENUE

1. Drew Hardware, LLC is an Oklahoma limited liability company duly authorized and actually transacting business in Oklahoma County which is also where the insured risk giving rise to this cause of action is located. Hartford Fire Insurance Company and Sentinel Insurance Company are foreign corporations transacting insurance businesses in Oklahoma County. Martin Insurance LLC is an Oklahoma limited liability company conducting business in Oklahoma County.



1

## FACTUAL BACKGROUND

2. Drew Hardware owns a commercial building located at 1940 Church Avenue in Harrah, Oklahoma. The building is a single-story, masonry structure with a modified bitumen roof.

3. Prior to April 26, 2013, the Manager for Drew Hardware sought to insure the building and consulted with an insurance agent employed by Martin Insurance LLC who recommended Hartford. The Manager, having seen television commercials for Hartford, believed the company was reputable and of solid net worth. Coverage was thus obtained and a premium payment made to Hartford Fire Insurance Company. A policy was later issued with identified Hartford in large font and which had an emblem of a Stag. At no time did the insurance agent nor anybody else ever advise the Manager for Drew Hardware that a company other than Hartford would be the writing company for the policy.

4. A policy was thereafter issued which afforded coverage for specific perils including windstorm and hail. The Policy Declarations prominently displayed "The Hartford" with the well-recognized emblem of a Stag. The policy, which contained an arbitration clause, was periodically renewed with annual premium payments being made to Hartford Fire Insurance Company.

5. Over the ensuing years, the structure experienced a couple of roof leaks for which patch-type repairs were made. There were no leaks on April 26, 2013.

6. On or about April 26, 2013, a severe hail storm tracked across Harrah which contained baseball-sized hail. The hail pounded the Drew Hardware building as well as many other structures in Harrah including that which houses the neighboring Harrah Historical Society. Local residents confirmed the presence of baseball-sized hail.

7. Several days later, a roofer engaged to replace the roof for the Harrah Historical Society contacted Drew Hardware and offered to provide an estimate of any damage inflicted as a result of the hail storm.

8. Drew Hardware accepted the roofer's offer since tenants of the building were reporting various water leaks. The roofer inspected the roof and provided a verbal estimate which exceeded the sum of $60,000.00. Drew Hardware then reported the damage to its insurance agent on or about May 6th at which time a claim was submitted to Hartford.

9. On or about May 12th, Drew Hardware was contacted by Alicia Buie who represented herself as being a claim representative for Hartford. Buie advised the Manager for Drew Hardware that she was based in Chicago and would thus dispatch another Hartford representative, Ken Criswell, to inspect the building. She, in the meantime, directed Drew Hardware to make emergency repairs so as to mitigate any damage. Drew Hardware, as a result, hired a roofer who applied new material to a section of the roof. A badly damaged AC unit was later replaced upon the recommendation of a local heat & air contractor.

10. During an inspection conducted on May 15th, the Hartford adjustor confirmed to Drew Hardware's roofer that the damage exceeded the sum of $60,000.00 and that a written analysis would be supplied to Ms. Buie within the next week.

11. Several weeks thereafter passed with no communication from Ms. Buie. The Manager for Drew Hardware, as a result, called Ms. Buie so as to inquire whether she had received Mr. Criswell's written report. Ms. Buie confirmed she had, in fact, received Mr. Criswell's analysis but that he had improperly completed the forms. Ms. Buie advised she would call when the forms had been properly completed.

12. Sometime later, Ms. Buie informed the Manager for Drew Hardware that Mr. Criswell had been intimidated by Drew Hardware's roofer and that he had actually found no evidence of hail damage. Repeated requests for copies of Mr. Criswell's written report, however, were thereafter refused and/or ignored by Ms. Buie.

13. Ms. Buie instead informed Drew Hardware that she was "starting over" on the claim and expressed her intention to retain Hancock Claims Consultants to conduct yet another inspection of the building. The inspection occurred on May 30th at which time the inspector found evidence of hail damage to various soft metals on the roof. It was his conclusion, however, that the damage suggested the presence of hail ranging in size between .75" and 1.25", and not the 2.25" required to damage a modified bitumen roof. He supported his opinion, in part, by the lack of damage to the four (4) foot section of roof which, apparently unknown to him, had been the subject of the earlier emergency repair. The inspector further documented a supposed lack of adequate attic ventilation as contributing

to the overall poor condition of the dwelling. Drew Hardware's building, however, has no attic nor is it a dwelling.

14. Ms. Buie next arranged for an inspection of the Drew Hardware building to be conducted by Donan Engineering on June 27th. The ensuing report authored for "Hartford Insurance Company" indicates Ms. Buie erroneously informed Donan that the structure had been experiencing leaks before the storm and that the leaks were now worse following the storm. She did not inform Donan of the previous patch repairs nor of the emergency repairs made following the storm. The report further references a "historical weather report" from 2012, rather than 2013, as well as weather observations from a weather station situated approximately 13 miles away and which experienced no hail on the day of the Harrah storm. Donan concluded the presence of "only minor hail stones" yet confirmed hail damage was present to the "gutters, roof-top metal vent caps, tops of mechanical equipment, the roof-top's wood structure, and the HVAC condenser fins". Some dents measured 1 1/4" in depth with no damage otherwise being noted to "newer membrane patches". Donan's conclusion, despite the presence of significant collateral damage, was that the roof had received no hail damage. Nowhere in the report does Donan acknowledge the local reports of baseball-sized hail.

15. Copies of the Hancock and Donan reports were thereafter supplied to Drew Hardware which garnered immediate written responses wherein Drew Hardware identified many discrepancies in the reports. Drew Hardware informed Ms. Buie the Hancock report erroneously relied upon the absence of damage to the section of emergency patch repair

which was applied after the storm as well as supposed ventilation issues with respect to a non-existent attic in a non-existent "dwelling". As for the Donan report, Drew Hardware emphasized Ms. Buie's erroneous portrayal of worsening water leaks since the storm as well as Donan's reliance on historical data for a different storm which occurred in a different location as well as in a different year. It was further emphasized Hartford, at no time, had ever investigated the presence of baseball-sized hail as had been portrayed by various residents of Harrah.

16. Ms. Buie did not respond to any of the errors identified in Drew Hardware letters nor was there any additional investigation conducted with respect to the claim. Ms. Buie instead altered the previous estimate prepared by Mr. Criswell for "The Hartford Insurance Company" and extended an offer of $1,232.29 which contemplated only the collateral damage less depreciation. An additional $50.00 was offered to repair the A/C unit which, according to an A/C contractor, had been destroyed as a result of the hail storm. Ms. Buie, however, refused to pay for the replacement costs based upon a "picture audit" performed by Donan. At no time did Ms. Buie, Donan nor anyone else affiliated with either insurer ever inspect the A/C unit.

17. Drew Hardware, knowing Hartford's field adjustor, Mr. Criswell, had, in fact, confirmed the presence of extensive roof damage upon his initial inspection, thereafter retained attorney Craig Hoster who, upon written demand, was finally provided a copy of Mr. Criswell's original report. The report, contrary to Ms. Buie's earlier representation that it identified no damage, estimated the roof damage as totaling $62,497.00.

18. Drew Hardware thereafter requested an arbitration pursuant to the terms of the policy and secured yet another estimate which totaled the sum of $73,063.00. Ms. Buie rejected the arbitration request claiming the provision did not apply since there was a "coverage" dispute as to whether hail had, in fact, damaged the roof.

19. Drew Hardware thereafter filed a complaint with the Oklahoma Department of Insurance at which time it learned for the first time that Sentinel Insurance Company rather Hartford was the issuer of the insurance policy. According to The Annual Report for the Oklahoma Insurance Department, Sentinel Insurance Company has Capital and Surplus totaling $131M whereas Hartford Fire Insurance Company has Capital and Surplus in excess of $12B.

## CAUSES OF ACTION

### I.
### BREACH OF CONTRACT

20. Drew Hardware re-alleges and adopts the allegations set forth in paragraphs 1 through 19.

21. Hartford Fire Insurance Company and/or Sentinel Insurance breached the insuring agreement by wrongfully and without just cause failing to pay for all the property damage caused by the hail storm.

22. Because of the breach of contract, Drew Hardware has suffered damage in excess of $60,000.00. It has otherwise been unable to sell the structure since the roof has not yet been replaced. Additional damage from the loss of sale total the approximate sum of $185,000.00.

WHEREFORE, Drew Hardware respectfully requests that it be granted judgment against Hartford and/or Sentinel in an amount in excess of $245,000.00 and that it further be awarded all attorney fees and costs incurred in prosecuting this action.

## II.
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

23.   Drew Hardware re-alleges and adopts the allegations set forth in paragraphs 1 through 22.

24.   Hartford Fire Insurance Company and/or Sentinel Insurance breached the implied covenant of good faith and fair dealing by failing to reasonably investigate, evaluate and thereafter pay the claim submitted by Drew Hardware by, among other thing: 1) disregarding the damage estimate prepared by its own adjustor and which supported Drew Hardware's claim for benefits; 2) altering the estimate prepared by its own adjustor so as to wrongfully deprive Drew Hardware of policy benefits; 3) refusing to produce a copy of the original estimate prepared by its own adjustor; 4) manufacturing a dispute by claiming intimidation on the part of Drew Hardware's roofer; 5) disregarding the numerous reports of baseball-sized hail as reported by various Harrah residents; 6) failing to investigate the presence of baseball-sized hail as reported by various Harrah residents; 7) creating a sham-defense by soliciting predictably biased opinions from outside appraisers and/or engineers; 8) creating a sham-defense by providing false and inaccurate information to outside appraisers and/or engineers; 9) unreasonably relying upon opinions from appraisers and/or engineers which clearly contained erroneous and inaccurate information; 10) failing to re-

evaluate the claim once being notified of the inaccurate and false information contained in the reports authored by the appraisers and/or engineers; 11) refusing to honor Drew Hardware's request for arbitration despite policy provisions to the contrary; 12) fabricating a "coverage dispute" while denying the arbitration request submitted by Drew Hardware; and 13) actively searching for reasons to deny rather than pay Drew Hardware's claim.

25. Because of Hartford's and/or Sentinel's breach of the implied covenant of good faith and fair dealing, Drew Hardware has suffered contractual damages in excess of $60,000.00. It has otherwise been unable to sell the structure since the roof has not yet been replaced. Additional damage from the loss of sale total the approximate sum of $185,000.00.

WHEREFORE, Drew Hardware respectfully requests that it be granted judgment against Hartford and/or Sentinel in an amount in excess of $245,000.00; that it be awarded punitive damages in an amount equal to twice its actual damage or, in the alternative, the sum of $500,000.00; and that it further be awarded all attorney fees and costs incurred in prosecuting this action.

### III.
### VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT

26. Drew Hardware re-alleges and adopts the allegations set forth in paragraphs 1 through 25.

27. Drew Hardware's procurement of insurance was a "consumer transaction" as defined in Oklahoma's Consumer Protection Act.

28. The insurance agent employed by Martin Insurance LLC, in violation of 15 O.S. §751, et.seq., either knowingly, or with reason to know, represented that the subject of the consumer transaction was Hartford, when, in fact, it was Sentinel Insurance.

29. The insurance agent was acting within the course and scope of her employment when making the representations. Martin Insurance LLC is thus vicariously liable for her errors and/or omissions.

30. Hartford Fire Insurance Company otherwise accepted premium payments from Drew Hardware but thereafter, in violation of 15 O.S. §751, et.seq., provided a product from Sentinel Insurance Company.

WHEREFORE, Drew Hardware respectfully requests that it be granted judgment against Martin Insurance LLC and Hartford Fire Insurance Company in an amount in excess of $245,000.00 and that it further be awarded all attorney fees and costs incurred in prosecuting this action.

## IV.
## AGENT NEGLECT

31. Drew Hardware re-alleges and adopts the allegations set forth in paragraphs 1 through 30.

32. Drew Hardware was never advised by the insurance agent that Sentinel Insurance rather than Hartford would issue the policy for which a Hartford quote had been obtained.

33.  The insurance agent who sold the policy to Drew Hardware either knowingly concealed this information or, in the alternative, did not conduct a reasonable inquiry so as to fully inform Drew Hardware that Sentinel, rather than Hartford, would be issuing the policy.

34.  The agent had a duty to disclose that Sentinel rather than Hartford would be issuing the policy. The agent breached this duty.

35.  Drew Hardware relied on the insurance agent's omissions and, as a result, purchased coverage which it would not have otherwise purchased had it been fully informed of the pertinent facts.

36.  Drew Hardware has incurred damage as a result of the agent's neglect.

WHEREFORE, Drew Hardware respectfully requests that it be granted judgment in an amount in excess of $245,000.00 and that it further be awarded all attorney fees and costs incurred in prosecuting this action.

LAW OFFICES OF MARK S. COOPER, P.C.

_____
MARK S. COOPER, OBA# 12614
225 N. Peters Suite 8
Norman, Oklahoma 73069
(405) 292-7600 Telephone
(405) 366-7657 Facsimile

**ATTORNEY LIEN CLAIMED**